## Green *v.* Schrack.

*Land law—Location of original surveys—Monuments—Calls—Courses and distances—Evidence.*

The controlling factors in the location of original surveys based upon warrants issued from the land office, in the order of their weight and efficiency as evidence, are (1) the monuments on the ground including corners, lines, etc; (2) calls for adjoiners; (3) courses and distances. When there are neither monuments applicable to the survey nor calls for adjoiners, the courses and distances must govern.

In an action of ejectment for a strip of land one foot, three inches wide, where the starting point of the description is conceded, but there are no monuments referred to in plaintiff's deed, nor any call for adjoining lots or division fences, and the lot is described by a particular number, but there is no proper plan-of lots attached to the deed, and no reference to such a plan as having been recorded, the plaintiff is confined to the courses and distances mentioned in the deed.

*Ejectment—Title—Payment of taxes—Evidence.*

Assessments and payment of taxes are not admissible in an action of ejectment as evidence of title, but merely of a claim of possession.

Argued Dec. 8, 1900.   Appeal, No. 209, Oct. T., 1900, by plaintiff, from judgment of C. P. Northampton Co., Nov. T., 1898, No. 40, on verdict for defendant in case of Margaret E. Green v. John E. Schrack.   Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.   Affirmed.

Ejectment for a strip of land in the city of Easton.

The facts appear by the opinion of the Superior Court.

At the trial the defendant made the following offers:

1. I propose to prove by this witness (Margaret E. Green), that on April 1, 1890, the time of the purchase by her of the land in controversy, there was no fence inclosing the lot on the northern, southern and eastern boundaries, and that there was a fence erected along the western boundary line dividing her property from that of the defendant; to be followed by proof that this fence is a boundary line.

Objected to as incompetent and irrelevant.   The deeds from the parties define the respective rights, and this cannot be varied or altered in this way.

The Court: The objection is sustained and bill sealed for plaintiff. [1]

I propose to prove by the witness that her agreement with Harlem P. Hess was for the southwest corner lot at Eleventh and Lehigh streets in the city of Easton.

Objected to as incompetent and irrelevant, and that the same cannot affect John E. Schrack, the defendant in this suit.

The Court: The objection is sustained and bill sealed for the plaintiff. [2]

I propose to prove by this witness that since April 1, 1890, when she became the purchaser of the lot at the southwest corner of Lehigh and Eleventh streets, Easton, she has paid all the taxes assessed against the same.

Objected to as incompetent and irrelevant.

The Court: The objection is sustained and bill sealed for plaintiff. [3]

I propose to prove by this witness (J. Marshall Young), that in 1884, at the instance of the widow and heirs of James Hess, deceased, he made a plan or plot of the town lots of the estate of said James Hess, deceased, and that the said estate owned no real estate on Lehigh street immediately west of lot No. 49, and that lot No. 49, being the corner lot upon the opening of Eleventh street, was accepted by Harlem P. Hess, one of the heirs of the said James Hess, deceased, as a twenty-four foot lot.

Objected to as incompetent and irrelevant.

The Court: The objection is sustained and bill sealed for plaintiff. [4]

I propose to prove further by this witness that lot No. 49 adjoins the property of John E. Schrack on the east, and that a division fence dividing the Schrack lot from the lot No. 49 was erected upon the ground.

Objected to as incompetent and irrelevant.

The Court: The objection is sustained and bill sealed for plaintiff. [5]

I propose to prove further by this witness that at this time, at the time of the making of this plan of lots, Eleventh street was not regularly opened, and that said street is represented on said plan of lots as lot No. 48.

Objected to as incompetent and irrelevant.

The Court: The objection is sustained and the bill sealed for plaintiff. [6]

I propose to prove by this witness (John E. Schrack, the defendant, called on cross-examination), that when he became the purchaser of the house and lot on Lehigh street, on January 5, 1888, there was a fence erected on the eastern line, dividing his lot from lot No. 49, and that the same had been maintained by him up to the time of the purchase of lot No. 49, by Margaret E. Green, on April 1, 1890.

Objected to as incompetent and irrelevant.

The Court: The objection is sustained, and bill sealed for plaintiff. [7]

Plaintiff offers to call the commissioners' clerk of Northampton county, to prove that since April 1, 1890, taxes on lot No. 49 were assessed against, and paid by Margaret E. Green.

Objected to as incompetant and irrelevant.

The Court: The objection is sustained. Bill sealed for plaintiff. [8]

I also propose to prove that Harlem P. Hess, the grantor of Margaret E. Green, did not have said lot, or any portion thereof, assessed in his name, and that he paid no taxes thereon.

Objected to as incompetent and irrelevant.

The Court: The objection is sustained, and bill sealed for plaintiff. [9]

I propose to prove by this witness (Margaret E. Green, the plaintiff, recalled), that in 1891, or thereabouts, the city of Easton built a sewer on Lehigh street, in front of her property, lot No. 49, and that a sewer tax was assessed by the city of Easton against the abutting property owners, and that a tax on twenty-five feet was assessed against her, and that she paid the same.

Objected to as incompetent and irrelevant.

The Court: The objection is sustained, and bill sealed for plaintiff.

I propose to prove by this witness, that the actual measurement of her lot from the southwest corner of Eleventh and Lehigh streets to the eastern boundary line of the Schrack lot on which was erected a division fence at the time she became the purchaser, is twenty-five feet, three inches.

Objected to as incompetent and irrelevant.

The Court: The objection is sustained, and bill sealed for plaintiff. [11]

The court gave binding instruction for defendant. Plaintiff appealed.

26, (1901).] Assignment of Errors—Opinion of the Court.

*Errors assigned* were (1–11) rulings on evidence, quoting the bill of exceptions. (12) In giving binding instructions for defendant.

*George W. Geiser*, for appellant.—If Schrack was an abutter to lot No. 32 in 1888, according to the precise description in his deed from James Hess through Peil, it follows that when Harlem P. Hess, successor in title to James Hess, the common grantor of plaintiff and defendant, sold lot No. 49, conceded to be identical with No. 32 on James Hess's plan, Margaret E. Green, the plaintiff, takes a lot abutting on Schrack's land on the west. If the above proposition is correct, Harlem P. Hess parted with his entire title to the land next adjoining Schrack on the east in 1890, consequently the deed from Harlem P. Hess to Schrack in 1898 for the one foot under which Schrack defends in this ejectment, conveyed no title : Borough of Birmingham v. Anderson, 48 Pa. 253 ; Schenley v. City of Pittsburg, 104 Pa. 472 ; Craft v. Yeaney, 66 Pa. 210 ; Burkholder v. Markley, 98 Pa. 37 ; Lodge v. Barnett, 46 Pa. 477 ; Morse v. Rollins, 121 Pa. 537 ; Ogden v. Porterfield, 34 Pa. 191 ; Vastbinder v. Wager, 6 Pa. 339 ; McClure v. Jones, 121 Pa. 550 ; Irwin v. Patchen, 164 Pa. 51.

*H. J. Steele*, for appellee, cited : Moore v. Magrath, 1 Cowper, 9 ; Chaplin v. Srodes, 7 Watts, 410 ; Thompson v. Kauffelt, 110 Pa. 209 ; Breneiser v. Davis, 134 Pa. 1 ; Irwin v. Patchen, 164 Pa. 71 ; Hockenbury v. Snyder, 2 W. & S. 240 ; Sailor v. Hertzogg, 10 Pa. 317 ; Sample v. Robb, 16 Pa. 305 ; Beeson v. Hutchison, 4 Watts, 442.

OPINION BY BEAVER, J., January 22, 1901 :

The familiar and fundamental principles which apply to the location of original surveys based upon warrants issued from the land office are also, in the main, applicable to the location of lands described in a deed. The controlling factors in location, in the order of their weight and efficiency as evidence, are, (1) the monuments on the ground including corners, lines, etc. The difference between the different kinds of natural monuments and artificial ones, and their value as evidence need not be here discussed. (2) The calls for adjoiners. (3) Courses and distances. Where there are neither monuments applicable

to the survey nor calls for adjoiners, the courses and distances must govern.

In the present case the plaintiff claimed under a deed dated April 1, 1890, for a lot therein described as follows : " All that certain lot or piece of ground situated on the southwest corner of Lehigh and Eleventh streets in the city of Easton aforesaid, beginning at the intersection of said Lehigh and Eleventh streets and extending westwardly along said Lehigh street twenty-four feet and, of that width, southwardly along said Eleventh street, one hundred and twelve feet to a ten-foot wide alley, it being lot No. 49 of a certain plan of lots of the estate of James Hess, deceased," etc. There is no question raised, so far as the evidence shows, as to the starting point—the corner of Lehigh and Eleventh streets. The conveyance is of a strip of ground twenty-four feet in width and 112 feet in depth. No monuments are referred to and there is no call of any kind for an adjoiner. The plaintiff is, therefore, confined to the width as set forth in her deed. If the adjoining lot had been called for, or if the division fence claimed by her to exist as the common boundary of her lot and that adjoining had been referred to, there would have been ground in either case for the admission of the testimony offered, and for going beyond the width of her lot, as described in her deed. Her lot is described as No. 49, but there is no plot or plan of lots attached to her deed, and no reference to such a plan as having been recorded.

In the deed from James Hess to Nicholas Peil, under which defendant claims his original lot, dated April 1, 1876, it is described as " beginning at the corner of lot No. 34, a distance of 180 feet east from the east side of Elder alley ; thence extending along the south side of Lehigh street aforesaid eastwardly twenty feet to a corner of lot No. 32; thence extending, of the same width, southwardly one hundred and twelve feet to a ten-foot wide private alley, it being lot No. 33 of a plan of lots recently laid out by the said James Hess," etc. The same lot was conveyed by Nicholas Peil to the defendant, January 5, 1888. We cannot see that this helps the plaintiff's case, even if it be admitted that lots Nos. 32 and 49 are identical, for her grantor had an undoubted right to stop one foot short of the common boundary of lots Nos. 32 and 33 and this is what he apparently did.

June 8, 1898, Harlem P. Hess, through whom the plaintiff claims her title, conveyed to the defendant a strip described in his deed as follows: "Beginning at a point on the south side of Lehigh street aforesaid twenty-four feet west of the building line of Eleventh street; thence extending west one foot; thence extending south, of that width, in depth one hundred and twelve feet to a ten-foot wide private alley, bounded on the north by Lehigh street, on the east by lands of Margaret Green, on the south by a ten-foot wide private alley, and on the west by other lands of John E. Shrack, party hereto." This strip constitutes the subject-matter of dispute. The plaintiff claims that by her deed she was entitled to it although, if so entitled, her lot would be twenty-five feet, three inches in width instead of twenty-four feet, as stipulated in her deed. There seems to have been special care in the deed by Hess to her to avoid any reference either to a division fence or to an adjoining lot. Had there been such an allusion, as already pointed out, she would have been entitled to go either to the boundary fence or to the adjoining lot; but, being limited by the distance of twenty-four feet, as she undoubtedly is by her deed, there is nothing therein to take her beyond that distance and it, therefore, follows that the efforts to show the division fence or the line of the lot next beyond hers could not, under any circumstances, have extended her boundaries beyond the twenty-four feet conveyed to her. In Breneiser v. Davis, 134 Pa. 1, the property was described in the deed as "containing in front, including alley, nineteen feet, five inches, and in depth, one hundred and twenty feet, subject to the joint use of the alley on the north by the owner of the premises adjoining on the north." Mr. Justice CLARK, who delivered the opinion, in commenting upon the description, says: "This description, it must be conceded, without more, was sufficient to vest title to the premises in dispute in the plaintiff, and the learned judge so instructed the jury. The lots Nos. 138 and 140, it is admitted, were the same premises, and George D. Stitzel, the executor of the last will and testament of Andrew Davis, deceased, had power and authority under the will to sell the whole, in his discretion, for the best price he could obtain. The premises do not appear to have been divided and numbered according to any city plot or plan, but by a private draft made by the executor or under his directions, and it was competent

for him to make such division as in the exercise of a reasonable discretion might seem best for the interests of the estate. The executor, therefore, having advertised, sold and conveyed, according to a certain description, a lot of ground nineteen feet, five inches, in front, including the alley, and one hundred and twenty feet back, the purchaser would, in the absence of anything to restrict his right, be entitled to hold to that boundary, nor would the existence of a wooden fence within these lines, defining the mode of the present enjoyment of the property, limit his right to the line upon which it stood, for it was in the executor's power to convey to any line he might establish, regardless of the fence." In that case the court held that the distance mentioned in the deed carried the grantee's right beyond a fence to which no reference was made in the deed. Upon the same principle, the description here would limit the right of the grantee to the line twenty-four feet from Eleventh street, although it fell short one foot of the fence alleged by the plaintiff to be the division line between lot No. 49 and the one adjoining it.

It has been uniformly held that assessments and the payment of taxes, although not evidence of title, may be shown as evidence more or less efficient as to the question of the claim or possession of the party against whom the assessments have been made and by whom the taxes have been paid. If the evidence afforded by the payment of taxes and assessments for improvements had been admitted in this case, it would have been of no possible benefit to the plaintiff, unless held to be evidence of title, and not merely of claim or possession ; but, as it could not be properly so held, was, therefore, we think properly excluded. See Irwin v. Patchen, 164 Pa. 51.

With the corner of Lehigh and Eleventh streets conceded, there is nothing in the deed to the plaintiff which will carry her beyond the twenty-four feet on Lehigh street conveyed to her in her deed. We can see no error, therefore, in the rejection of the evidence, the several offers of which constitute the bulk of the specifications of error complained of, nor can we convict the court below of error in directing the jury to find for the defendant. The plaintiff had failed to show any title to the strip in dispute, and the defendant was, therefore, entitled to a verdict.

Judgment affirmed.