David Oil Company *v.* Fogle, Appellant.

Argued April 9, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*R. T. Mutzabaugh,* with him *Nash & Mutzabaugh, Sidney D. Blackman* and *F. M. Nash,* for appellant.

*W. D. Gallup,* with him *Gallup, Potter & Gallup* and *R. Pierson Eaton,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, May 27, 1946:

The question presented by this appeal is : does a mortgagee of unseated lands, out of possession, and under no duty to pay taxes thereon, who purchases the lands at a tax sale, acquire a good title which divests that of the mortgagor? The learned court below answered the question in the negative.

Appellee, owner of two tracts of unseated land, executed and delivered a mortgage on April 16, 1937, to the appellant. By the terms of the mortgage, appellee covenanted to pay the taxes, and in default, appellant was authorized to pay such taxes, which should be a lien upon the land. On June 13, 1938, one of the tracts was sold to appellant at treasurer's sale for delinquent taxes

for the years 1936 and 1937. Taxes for the years 1940 and 1941 on the other tract being unpaid, the county treasurer sold the premises to appellant on June 8, 1942. On February 9, 1945, appellee tendered appellant the amount of the costs and expenses involved in the acquisition of titles at the tax sales, and demanded reconveyance of the premises to the appellee. Appellant declined the tender, whereupon a bill in equity was filed to require appellant to reconvey the premises to appellee. Upon issue joined, and hearing, a decree was so made, from which the present appeal is taken.

A well-defined distinction exists between the rights and duties of a *mortgagee in possession* and those of a *mortgagee out of possession*. In the former case the mortgagee takes possession of the land and holds the same until the default has been cured: *Harper v. Consolidated Rubber Co.*, 284 Pa. 444, 451, 131 A. 356; *Randal v. Jersey Mortgage Investment Co.*, 306 Pa. 1, 158 A. 865; *Bulger v. Wilderman et al.*, 101 Pa. Superior Ct. 168; *Miles et al. v. Abe Kolsky & Company, Inc.*, 13 D. & C. 579 (FINLETTER, J.); *Alexander's Estate (No. 2)*, 34 D. & C. 169, 172 (LADNER, J.). But such mortgagee does not thereby become the real owner. He is a quasi or constructive trustee and must account to the owner: *Provident Trust Co. v. Judicial B. & L. Assn. et al.*, 112 Pa. Superior Ct. 352, 171 A. 287; *Fassitt v. North Tioga B. & L. Assn.*, 133 Pa. Superior Ct. 146, 2 A. 2d 499. It is uniformly conceded that because of the trust relationship a mortgagee in possession may not purchase the land at a tax sale for his own individual account.

Where, however, the mortgagee is *not in possession* a difference of opinion exists as to the right of a mortgagee to acquire a tax title in his own right as against the mortgagor. Some authorities deny this right, while others support it. An excellent annotation on this subject appears in 140 A. L. R. page 294. Cases are cited from seventeen states which deny the right, while cases are cited from eight states and a U. S. Circuit Court of

Appeals in support of such right. See also 61 C. J. section 1626, p. 1203.

The basic reason for denial of the right appears to be that the mortgagor and mortgagee have a unity of interest in the protection of their title and it is not equitable that either of them should act adversely to the other. The reason for the contrary view is that the mortgagor covenanted with the mortgagee to pay the taxes; the mortgagee never agreed to pay them. There is neither a legal nor moral obligation on the mortgagee to pay the taxes. The mere existence of a mortgagee-mortgagor relation does not create a trust. The mortgagee is therefore not prevented from acquiring title by purchase at a tax sale.

Apparently there are but two Pennsylvania cases which touch upon this point. In *Smith v. Reber et al.,* 1 Grant's Cases 217, Smith delivered to Reber, as security for a debt, a treasurer's deed by which Smith held title. It was held that Reber did not thereby acquire such a fiduciary relationship toward Smith as to prevent Reber from purchasing the same land at a subsequent treasurer's sale. The per curiam opinion reads: "This land is the plaintiff's only on the assumption, that when Reber (defendant) bought it in for taxes, he was agent or trustee of it for the plaintiff's vendor. But we see no other evidence of it than that the plaintiff's vendor had made an unsuccessful attempt to give the defendant a mortgage upon it by a pledge of the title papers. *If he had had a valid mortgage against it without possession, it is not pretended that he would have been bound for the taxes, or bound to attend to the payment of them,* and we are totally unable to comprehend how such a duty can arise from a fruitless attempt to create a mortgage" (italics ours).

In *Shoemaker v. The Bank,* 15 Phila. Reports 297, Judge BRIGGS quoted with approval Jones on Mortgages, pl. 713: "*Generally a mortgagee not in possession is under no obligation to pay the taxes on the mortgaged*

*property, and there is no reason why he may not acquire
a title to the property by a fair sale."* Id. p. 298.

The statements in both of these cases are, of course,
dicta. We have never before squarely met the question
now presented and are now required to determine which
of the two doctrines shall prevail in this Commonwealth.

After mature consideration we have concluded to
adopt the doctrine that a mortgagee out of possession,
and under no duty to pay taxes, is not precluded from
purchasing the unseated land at a tax sale, and may
acquire a title good against the mortgagor.

The wisdom of such rule appears in the facts of this
case. The learned court below found: "The dealing be-
tween the parties was perfectly open and consistent with
friendly and normal relationship . . ."

There existed no legal or moral obligation on the part
of the mortgagee to pay the delinquent taxes. Under the
terms of the mortgage the mortgagor expressly obligated
itself to pay them. As the land was *unseated,* there was
no personal liability on the mortgagor for the amount
of the delinquent taxes. However, the land was liable for
such payment. On a tax sale the lien of the mortgage on
unseated land is not protected as is the lien of a mort-
gage on seated lands. Such a mortgage might be lost
by a tax sale: Ladner's Real Estate Conveyancing, Vol.
1, section 100, p. 258, 259 et seq.; Hall's Searches and
Titles in Pennsylvania, section 179, p. 113. The mort-
gagee, to avoid losing his loan, was obliged to protect
his mortgage against being divested by the tax sale, and
was therefore justified in buying at the sale. To hold
that the title which he acquired must be held for the
benefit of himself and the mortgagor is contrary to the
very terms of the mortgage. Such a theory has no basis
for support. There existed no constructive or quasi
trust relationship between such mortgagee and mort-
gagor. The mere relation of mortgagor and mortgagee
will not prevent the mortgagee from acquiring title to
the mortgaged unseated premises by purchase at a tax
sale.

Furthermore, the mortgagee promptly notified the mortgagor of the tax sales and suggested an agreement for the protection of both parties. The mortgagor took no action. The first sale in 1938 was for delinquent taxes for 1936 and 1937; the second tax sale in 1942 was for taxes of 1940 and 1941. The mortgagor never redeemed or attempted to redeem the premises despite the actual notice to it by the mortgagee. To require the mortgagee now to assume the burden which the mortgagor itself expressly covenanted to bear, and to ignore the tax sales to the mortgagee by the mortgagor's neglect to redeem, and thereafter—after the expiration of the period for redemption—to insist that the mortgagee held title for both, is inequitable and unjust.

The appeal is sustained, the decree reversed, and the bill dismissed. Costs to be paid by the appellee.